UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JAVON JONES, | ) |
| | ) |
|     Petitioner, | ) |
| | ) |
| vs. | )    Case No. 4:18 CV52 ACL |
| | ) |
| JAY CASSADY, | ) |
| | ) |
|     Respondent. | ) |

**<u>MEMORANDUM AND ORDER</u>**

This matter is before the Court on the Petition of Javon Jones for a writ of habeas corpus under 28 U.S.C. § 2254.

## I. Procedural History

Jones is currently incarcerated at the Jefferson City Correctional Center in Jefferson City, Missouri, pursuant to the Sentence and Judgment of the Circuit Court of Mississippi County, Missouri. (Doc. 12-3 at pp. 53-54.)

After a jury trial, Jones was found guilty of second-degree murder, attempted first-degree robbery, and armed criminal action. *Id.* at pp. 47-49. The court sentenced him to thirty years' imprisonment for the murder, ten years' imprisonment for the robbery, and twenty years' imprisonment for the armed criminal action, with the thirty-year and the ten-year sentences running concurrently and the twenty-year sentence running consecutively. *Id.* at pp. 53-54.

In his single point raised on direct appeal of his convictions, Jones argued that the trial court abused its discretion in overruling his motion in limine and objection to testimony from jailer Dan Bright that Jones used an inflammatory pejorative for the victim, because this evidence had

1

no probative value and was outweighed by its prejudicial impact on the jury. (Doc. 12-4.) On December 13, 2013, the Missouri Court of Appeals affirmed Jones' convictions. (Doc. 12-6.)

Jones filed a *pro se* motion for post-conviction relief under Rule 29.15. (Doc. 12-7 at pp. 8-14.) After appointment of counsel, an amended post-conviction relief motion was filed. *Id.* at pp. 17-46. In his amended motion, Jones argued that he received ineffective assistance of trial counsel in that counsel failed to assert his right to a speedy trial (*id.* at pp. 19-27) and failed to call Aaliyah Ewing to testify on his behalf (*id.* at pp. 27-32). Jones also argued that he received ineffective assistance of appellate counsel in that counsel failed to assert on appeal that the trial court erred in overruling his objection to the prosecutor's inquiry of State witness Corporal Jeff Johnson. *Id.* at pp. 33-40. The motion court denied Jones' motion after holding an evidentiary hearing. *Id.* at pp. 47-79.

In his appeal from the denial of post-conviction relief, Jones argued that appellate counsel was ineffective in failing to assert on appeal that the trial court erred in overruling his objection to the prosecutor's inquiry of Corporal Johnson. (Doc. 12-9.) The Missouri Court of Appeals affirmed the decision of the motion court. (Doc. 9-6.)

Jones filed the instant Petition on January 10, 2018, in which he raises a single ground for relief. (Doc. 1.) Jones argues that the trial court erred in overruling his motion in limine and trial objection to testimony that Jones referred to his victim by a derogatory name after his arrest. *Id.* at p. 5.

On April 24, 2018, Respondent filed a Response to Order to Show Cause. (Doc. 12.) Respondent argues that Jones' Petition should be denied because his claim is not cognizable and it is meritless.

## II.  Facts[1]

On November 10, 2010, Justin Wright was fatally shot while he sat in his car outside the residence of his girlfriend's sister in Charleston, Missouri.  That day, Wright, who lived in Caruthersville, and two friends, picked up Wright's girlfriend, Katrina Williams, in Charleston, and the four went to her sister's home.  Wright and his friends later left to go to a convenience store.  When they returned to the house, Wright's friends went inside and told Katrina that Wright was still outside in his car and wanted to see her.  As she stepped out and onto the porch, Katrina saw Jones open the passenger-side door of Wright's car, lean in, and begin shooting.  As she ran toward the car yelling for the shooting to stop, more shots were fired, and Jones ran off.  Katrina identified Jones as the shooter and informed police when they arrived that she saw his face and saw him firing a weapon.  Wright was shot five times and later died at the hospital.

When Jones was interviewed by law enforcement, he gave investigators six different versions of what had happened.  In one version, he told them he was the shooter.  Jones was placed under arrest, and Dan Bright was the jailer who subsequently booked Jones into jail.  During the booking process, Bright asked Jones, "Do you know who got shot in Charleston last night?"  To his inquiry, Jones responded, "I don't know.  I don't know why everybody's so worried about it.  He's a faggot anyway."

## III.  Standard of Review

A federal court's power to grant a writ of habeas corpus is governed by 28 U.S.C. § 2254(d), which provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any

---

[1] The Court's recitation of the facts is taken from the decision of the Missouri Court of Appeals on direct appeal.  (Doc. 12-6 at 2-3.)

3

claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The Supreme Court construed § 2254(d) in *Williams v. Taylor*, 529 U.S. 362 (2000). With respect to the "contrary to" language, a majority of the Court held that a state court decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or if the state court "decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Id.* at 405. Under the "unreasonable application" prong of § 2254(d)(1), a writ may issue if "the state court identifies the correct governing legal rule from [the Supreme Court's] cases but unreasonably applies [the principle] to the facts of the particular state prisoner's case." *Id.* Thus, "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 410. Although the Court failed to specifically define "objectively unreasonable," it observed that "an unreasonable application of federal law is different from an incorrect application of federal law." *Id.* at 410.

### IV. Petitioner's Claim

Jones argues that the trial court erred in admitting evidence of his statement about the murder victim. He contends that his reference to the victim as a "faggot" was not relevant evidence. (Doc. 1 at p. 5.) Respondent argues that Jones' claim is not cognizable in a federal habeas action. He further argues that the claim is meritless.

4

In a motion in limine, Jones requested that the trial court preclude the State from eliciting testimony regarding the statement at issue.  (Doc. 12-3 at p. 15.)   He argued that any possible probative value this statement might have is highly outweighed by the prejudice he would suffer.  *Id.*   During a pre-trial hearing on September 19, 2012, the trial court took up Jones' motion in limine, and took his request under advisement.   *Id.* at p. 9.   Before trial began the next day, the trial court overruled Jones' motion, but limited the State's evidence to "only one or two sentences from the defendant, and that's it."   (Doc. 12-1 at p. 8.)

When the State later called Dan Bright to testify, defense counsel raised an objection to his prospective testimony outside the hearing of the jury, arguing that "[t]he probative value of this evidence is far outweighed by the prejudice.   It is inflammatory and also denies the defendant the right to a fair trial."   (Doc. 12-2 at pp. 4-5.)   The State responded, claiming that the testimony would be no more inflammatory in consideration of the evidence already before the jury, "and it shows a consciousness of [Jones'] guilt when he made that statement after he had made, at the end of after being interrogated."   *Id.* at p. 5.   The trial court overruled Jones' objection to the testimony.   *Id.*

Bright testified that, at the time they were booking Jones on November 11, "all we knew was there was a shooting that night."   *Id.* at p. 6.   Bright said he asked Jones, "Do you know who got shot in Charleston last night?"   Jones stated, "I don't know.   I don't know why everybody's so worried about it.   He's a faggot anyway."   *Id.*   On cross-examination, Bright stated that he included Jones' statement in a report he later wrote on November 17, not to make Jones look bad; rather, "It was the way that he said it, with lots of anger."   *Id.* at p. 7.

Jones challenged the trial court's admission of Bright's testimony in his direct appeal, arguing that the testimony was not relevant and was unduly prejudicial.   The Missouri Court of Appeals held as follows, in relevant part:

5

To be admissible, evidence must be logically and legally relevant. Logically relevant evidence "has some legitimate tendency to establish directly the accused's guilt of the charges for which he is on trial[.]" *State v. Barton*, 998 S.W.2d 19, 28 (Mo. banc 1999). Legally relevant evidence is evidence whose probative value outweighs its prejudicial effect. *Id*. "Conduct and declarations of a defendant that are relevant to show a consciousness of guilt or a desire to conceal the offense are admissible because they tend to establish the defendant's guilt of the charged crime." *Id*.

Although Defendant presented no evidence, through counsel's arguments, cross-examination, and re-cross examination, Defendant defended the charges by asserting that someone else committed the crimes. In opening arguments, defense counsel summarized evidence he believed demonstrated that law enforcement had probable cause to arrest another man for Wright's murder. Counsel also examined one investigator who Katrina Williams initially told "she felt like . . . [Tim] Wiley had put [Defendant] up to this." Wiley was Katrina Williams' ex-boyfriend and father of her children. Katrina testified that Wiley had accosted her and Justin Wright at least two times that same evening and that Wiley was very controlling, violent, and jealous and had abused her during their relationship. Defendant also implicated Wiley, at one time saying Wiley was the shooter, and at another time stating that Wiley put Defendant up to robbing and shooting Wright. Wiley was also arrested and charged in connection with the murder of Justin Wright.

Defendant's hostility toward Wright and his motive to injure him were contested issues at trial. Defense counsel cross-examined Katrina Williams, asking, "Now [Defendant] and Justin Wright didn't even know each other did they?" When Katrina responded, "Actually they did[,]" counsel impeached her with a statement she gave when interviewed by law enforcement on the night of the shooting, indicating that Justin Wright did not know anyone in Charleston. In closing argument, defense counsel further argued that Defendant "had no reason to kill Justin Wright." However, counsel argued, Tim Wiley had motive, means, and opportunity and Wright was "messing around with the mother of Timothy Wiley's children. . . . [and] the object of his obsession." He argued that Wiley was the "type of human being to take a human life. . . . [and] that's the type of person Timothy Wiley is."

"[E]vidence of bad character . . . is admissible to establish motive, intent, the absence of mistake or accident, a common scheme or plan, or the identity of the alleged perpetrator." *State v. Peal*, 393 S.W.3d 621, 628 (Mo. App. 2013) (internal quotation marks omitted). Defendant here defended the charges by asserting, in part, he had no motive to shoot Justin Wright. "Generally, parties have wide latitude in developing evidence of motive." *State v. Petty*, 967 S.W.2d 127, 140 (Mo. App. 1998). Defendant's use of the derogatory term demonstrated Defendant's general animus toward victim and was logically relevant in substantiating motive. *See State v. McClanahan*, 202 S.W.3d 64, 71 (Mo. App. 2006) (evidence directly establishing the defendant's guilt in the crime charged is admissible).

Moreover, any prejudice perceived by a defendant "from the admission of his own epithets at trial 'can be attributed to the very probativeness of the

6

>   challenged evidence.'" *State v. McDaniel*, 254 S.W.3d 144, 147 (Mo. App. 2008) (quoting *State v. Johnson*, 201 S.W.3d 551, 557 (Mo. App. 2006)). "A '[d]efendant is not entitled to exclude evidence merely because it damages his case.'" *Id*. Here, the trial court did not abuse its discretion in concluding that the probative value of evidence of Defendant's statements in regard to the victim outweighed any unfair prejudicial effect. *See State v. Thomas*, 272 S.W.3d 421 , 427 (Mo. App. 2008) (finding that defendant's "use of racial epithets demonstrated [d]efendant's general animus toward victim and was highly relevant in showing [d]efendant's clear motive and intent to do harm."). We find no abuse of the trial court's discretion to admit the challenged testimony. Defendant's point is denied.

(Doc. 12-6 at pp. 6-8.)

The admissibility of evidence is a matter of state law and does not form a basis for habeas relief unless the trial error is so great as to amount to a denial of due process. *Bucklew v. Luebbers*, 436 F.3d 1010, 1018 (8th Cir. 2006). "It is not the province of a federal habeas court to reexamine state court determinations on state law questions." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991). "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* at 68. "A federal issue is raised only where trial errors infringe on a specific constitutional protection or are so prejudicial as to amount to a denial of due process." *Bucklew*, 436 F.3d at 1018. "Rulings on the admission or exclusion of evidence in state trials rarely rise to the level of a federal constitutional violation." *Nebinger v. Ault*, 208 F.3d 695, 697 (8th Cir. 2000).

In this case, the State appellate court's determination that the challenged testimony was admissible was reasonable and consistent with clearly established federal law. As stated by the Missouri Court of Appeals, the evidence regarding Jones' hostility to the victim was relevant to establish Jones' motive to injure him. Because the issue of Jones' motive was contested at trial and highly relevant, any prejudicial effect was outweighed by the probative value of this

evidence. Thus, Jones' due process rights were not violated by the admission of Bright's testimony.

Accordingly, the Petition will be denied.

## V. Certificate of Appealability

To grant a certificate of appealability, a federal habeas court must find a substantial showing of the denial of a federal constitutional right. *See* 28 U.S.C. § 2253(c)(2); *Hunter v. Bowersox*, 172 F.3d 1016, 1020 (8th Cir. 1999). A substantial showing is established if the issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserved further proceedings. *See Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997). In this case, Jones has failed to make a substantial showing of the denial of a constitutional right. The undersigned is not persuaded that the issues raised in his Petition are debatable among reasonable jurists, that a court could resolve the issues differently, or that the issues deserve further proceedings.

Accordingly, no Certificate of Appealability shall be issued.

## ORDER

**IT IS HEREBY ORDERED, ADJUDGED and DECREED** that the instant Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 be **denied** and be **dismissed with prejudice** by separate judgment entered this date.

**IT IS FURTHER ORDERED, ADJUDGED and DECREED** that Petitioner be denied a Certificate of Appealability if Petitioner seeks to appeal this Judgment of Dismissal.

/s/ Abbie Crites-Leoni
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 22nd day of March, 2021.